UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

ANTHONY C. AUYER,                    )
                                     )
        *Petitioner*,                )
v.                                   )        No.    1:05-cr-60/1:07-cv-233
                                     )
UNITED STATES OF AMERICA             )        Judge Edgar
                                     )
        *Respondent*.                )

### MEMORANDUM

Petitioner Anthony C. Auyer,("Auyer" or Petitioner), has made a *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255. The United States has filed a response and petitioner a reply. After reviewing these filings and the record, the Court concludes the motion is without merit and it will be denied. The record conclusively shows that Auyer is not entitled to relief under § 2255 and there is no need for an evidentiary hearing.

## I.    Standard of Review

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268

F.3d 346, 351 (6th Cir. 2001).

Petitioner Auyer bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

To warrant relief under § 2255 based on an alleged non-constitutional error, Auyer must show there was a fundamental defect in the criminal proceeding which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process of law. *Hill v. United States*, 368 U.S. 424, 428 (1962); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

A § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady,* 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996); *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984).

An evidentiary hearing is unnecessary if there are no material issues of fact in dispute or if the record conclusively shows that Auyer is not entitled to relief under § 2255. An evidentiary hearing is not required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485, (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Cordell v.*

*United States*, 2008 WL 4568076, * 2 (E.D. Tenn. Oct. 14, 2008).

Auyer bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. Mere vague conclusions, which are not substantiated by allegations of specific facts with some probability of verity, are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a viable claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Ryals v. United States*, 2009 WL 595984, * 5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, 2008 WL 2811902, * 1 (E.D. Tenn. July 18, 2008).

## II.     Facts and Procedural History

The underlying facts are summarized in the presentence investigation report (PSR). On May 10, 2005, a United States grand jury returned a fourteen count Indictment charging bank fraud, mail fraud, conspiracy to commit bank and mail fraud, money laundering conspiracy, money laundering conspiracy and wire fraud. Auyer was charged in Counts One through Fourteen. On April 4, 2006, the petitioner was scheduled for trial, however on April 3, 2006, a Notice of Intent to Plead Guilty was filed. On April 3, 2006, same day as the Notice was filed, Auyer appeared before Judge R. Allan Edgar. Without benefit of a plea agreement, defendant pled "straight up" to the Indictment. The Court accepted the guilty plea and sentencing was scheduled for July 24, 2006. On July 24, 2006, Auyer was sentenced to 34 months on each count, to be served concurrently, and to five years of supervised release, consisting of 5 years on Counts 1 - 2, 4 - 7, 13 - 14, and 3 years on Counts 3, 8-12, also to be served concurrently. Further, Auyer was ordered to pay an $1,400.00 special assessment and $1,358,059.00 in restitution. This amount was not disputed in court. A Notice of Appeal was never filed by the petitioner.

3

**III.**   **Claims in 28 U.S.C. § 2255 Motion**

On August 8, 2007, Auyer filed this 28 U.S.C. § 2255 motion, raising two claims. In the first one, petitioner asserts that, for several reasons, his Fifth and Eighth Amendment rights were violated in that the Court imposed an unconstitutional sentence and restitution. Auyer specifically argues that he did not receive an evidentiary hearing to resolve disputed facts in his PSR; that collateral recovered by the victims was not applied or not properly applied to offset their losses; and that the amount of restitution was not based on charged conduct, but on relevant conduct, which was outside the time-limits of the offenses to which he pled guilty. In addition, Auyer insists that the amount of loss was incorrectly determined vis-a-vis mitigating factors, intervening causes, economic reality, and pecuniary harm.

Second, the petitioner claims that he was denied the effective assistance of counsel, which resulted in the imposition of a harsher sentence and more onerous restitution. Counsel's claimed errors are many and include purported failings during the pretrial phase, the change-of-plea hearing,[1] the PSR preparation stage, the sentencing proceedings, and the post-sentencing phase. All these shortcomings violated his right to the effective assistance of counsel under the Sixth Amendment, so alleges Auyer.

**IV.**   **Analysis**

The Court finds that Auyer has not met this burden of showing that he is entitled to relief under 28 U.S.C. § 2255 on either of his claims. Auyer has not established an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. He has not presented sufficient, credible facts showing that his Fifth, Sixth, or Eighth Amendment

---

[1] Because Auyer pled guilty to the indictment at his rearraignment, not a change-of- plea hearing, "rearraignment" is the term the Court will use to refer to those proceedings.

rights were violated.

### A.    Restitution

The total amount of restitution set forth in petitioner's PSR and ordered by the Court was $1,358,059.00, with $1,254,518.00 of that sum to be paid to Bank Tennessee and $103,541.00 to the Tennessee Department of Economic and Community Development. (PSR, p. 16, ¶86; Court File No. 91, p.6). The restitution amount disclosed in the PSR was not disputed at sentencing. Indeed, during the sentencing hearing, the Court inquired about any objections to the PSR, and counsel for petitioner responded, "We have worked through the objections with pretrial and there are no objections at this time." (Court File No. 98, Sent. T., p. 3, Held in Clerk's Office). A defendant who fails to object at the time of sentencing to alleged inaccuracies in a PSR waives the right to challenge the PSR in a collateral proceeding:

> If the system [of sentencing a criminal defendant] is to work and if appellate review is to be meaningful, it is absolutely essential that a defendant raise all objections to the sentence before the sentencing judge in the first instance. For this reason, the law has developed that a failure to object results in a waiver.

*United States v. Cullens*, 67 F.3d 123, 124 (6th Cir. 1995) (citations omitted). *See also United States v. Jarman*, 144 F.3d 912, 915 (6th Cir. 1998) ("This circuit has explicitly held that failure to object to an enhancement operates as a waiver."); *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996) ("We have consistently held that a § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding.").

Nor did petitioner challenge the restitution amount in an appeal to the Sixth Circuit Court of Appeals. A claim which could have been but was not raised on appeal or at an earlier opportunity is deemed to have been waived. *Bousley v. United States,* 523 U.S. 614, 619 (1998); *United States v. Frady,* 456 U.S. 152, 166 (1982); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000); *Turner v. United States,* 1999 WL 777669 (6th Cir. Sept. 17, 1999) (a challenge to the merits of a restitution

order is not properly raised in a § 2255 motion).

A petitioner can overcome the procedural bar with a showing of cause for his failure to raise a claim at the proper time and actual prejudice. *Bousley,* 523 U.S. at 619; *Frady*, 456 U.S. at 168; *Elzy*, 205 F.3d at 884. A procedural default will also be overlooked where a petitioner can demonstrate that the failure to review his claim will result in a fundamental miscarriage of justice, *Coleman v. Thompson*, 501 U.S. 722, 757(1991), such as when a petitioner makes a colorable showing that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *See Schlup v. Delo* , 513 U.S. 298, 314-15 (1995); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Petitioner certainly could have raised the claims at his sentencing or in an appeal (had he filed one) which he now presents in his § 2255 pleading. He, therefore, must show cause and prejudice to surmount his double procedural default. As cause, Auyer alleges that he had ineffective assistance at sentencing due to counsel's failure to argue the errors in the PSR, without which failure petitioner's guidelines sentence range would have been 15 to 21 months and the restitution amount would have fallen to a $53,541.00 range or to $135,178.[2] (Court File No. 148, p. 9).

The Supreme Court has set out certain guidelines to determine whether sufficient cause exists to excuse a petitioner's procedural default. First, attorney error may constitute "cause" only if it amounts to ineffective assistance of counsel in violation of the Sixth Amendment. *Coleman*, 501 U.S. at 725 (citing to *Carrier*, 477 U.S. at 488). Second, even if a petitioner has not personally waived a claim, his counsel's default of that claim, pursuant to a trial strategy or tactical decision, is attributable to the petitioner. *Carrier*, 477 U.S. at 485. Third, a petitioner cannot demonstrate

---

[2] Petitioner has made inconsistent allegations in his pleadings concerning the correct amount of restitution. .

cause merely by showing that his attorney failed to recognize the legal or factual basis of a claim or failed to raise it despite recognizing it. *Reed v. Ross,* 468 U.S. 1, 16 (1984) (same). Also, cause does not depend on the fact that counsel made errors or even the type of errors made by counsel; a prisoner bears the risk of any of counsel's errors that do not rise to the level of a constitutional deprivation. *Carrier*, 477 U.S. at 488.

Here, defense counsel filed 40 objections to the PSR, and a fair number of those objections were directed to the amount of loss or restitution as determined by the probation officer who prepared the PSR. (*See* Objections to Presentence Report, Available in the Clerk's File). Counsel, therefore, recognized that he had a basis to challenge the amount of restitution contained in the PSR. Even so, he responded to the Court's question about whether there were any outstanding objections to the PSR by stating that the objections had been resolved with "pretrial" and that there were no remaining objections. As *Reed* explains, cause cannot be demonstrated by the mere showing that an attorney failed to raise a claim despite recognizing it.

Nonetheless, because the Sixth Circuit is in the minority of circuits which permits a restitution claim to be raised on collateral review, so long as it is tied to a claim of ineffective assistance of counsel, *see Weinberger v. United States*, 268 F.3d 346, 352 n.1(6th Cir. 2001) ("We will follow this court's precedent . . . allowing a petitioner to contest a restitution order under based on a meritorious ineffective assistance of counsel claim.") (citing *Ratliff v. United States*, 999 F.2d 1023, 1025-27 (6th Cir. 1992)), petitioner will still obtain review of his claim of cause for the forfeiture of his restitution claim when the Court examines his allegations that his attorney gave him ineffective assistance at sentencing.

### B.    Ineffective Assistance

Petitioner charges his attorney, Mr. Lee Davis, with certain shortcomings with regard to the

pre-plea, plea, sentencing, and post-sentencing stages of his criminal proceedings.

### 1. The Controlling Law.

The United States Supreme Court has established a two-part test for determining when assistance of counsel is constitutionally ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, the petitioner must show his counsel's errors were so egregious as to render counsel's performance constitutionally deficient – that is, outside the "wide range of professional assistance." *Id.*, at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In effect, in order to show counsel's performance was deficient, petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*, at 689.

Second, petitioner must show that his counsel's deficient performance so prejudiced him that the result of the proceeding is unreliable. *Id.*, at 687. A petitioner will satisfy the prejudice prong of the *Strickland* test if he shows that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.[3] In order to establish "prejudice" within the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's professional errors, he would not have pled guilty but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Id.* at 59. Indeed, counsel is constitutionally ineffective only if a performance

---

[3] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.*

which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

## 2. The Claims

*a) Rearraignment*:     Auyer asserts that counsel failed to request an evidentiary hearing at his rearraignment to determine the facts of his client's clearly complex case. However, fact-finding is one of the purposes of a trial. A jury or a judge would have found those facts at a trial, had petitioner chosen to stand on his initial plea of not guilty. But, he did not: Auyer opted to plead guilty.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.". *In re Winship*, 397 U.S. 358, 364 (1970). However, this due process right can be waived, as can others, by the entry of a knowing and voluntary guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("[T]he plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial-a waiver of his right to trial before a jury or a judge."). That is so because "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989).

That is what happened here. Petitioner entered guilty pleas to all counts in the Indictment, and he does not allege that his plea was invalid (with the exception of the bank and mail fraud counts discussed below). Having pled guilty and waived a trial, where the facts would have been determined, he cannot be heard to complain that his attorney should have asked for an evidentiary hearing to consider those facts. *McMann v. Richardson*, 397 U.S. 759, 766 (1970) ("A conviction after a plea of guilty normally rests on the defendant's own admission in open court that he

committed the acts with which he is charged.").

   *b) Pre-trial Phase*: In this multi-part claim, petitioner first contends that he tried to contact Mr. Davis and that most of his attempts were unsuccessful. Then, when petitioner sat down with counsel to prepare a defense, counsel was uninterested in so doing. Also, counsel would not file motions requested by petitioner; would not negotiate a proffer session after the AUSA had offered to engage in one and petitioner had requested a session; would not prepare for trial, insisting that trial preparation wait until the prosecution rested its case; reassured petitioner that he had not committed any crimes; adopted a "wait and see" attitude, instead of pursuing a proactive defense; and, two days before trial, waylaid Auyer, telling him that he had no defense, that he would have to plead guilty, and that counsel would obtain a Rule 35(b) sentence reduction for substantial assistance, thus negating any sentence rendered. After hearing this advice, petitioner felt that he had no choice but to plead guilty, believing that his attorney refused to advance a defense, that he had no hope of a continuance to secure other counsel, and that he had been promised a Rule 35(b) sentence reduction.

  The government has attached the affidavit of Mr. Davis, petitioner's retained attorney, to its response to the § 2255 motion. (Court File No. 136, Attach. 1, Affidavit of Lee Davis). Mr. Davis denies all pertinent allegations made by petitioner. Mr. Davis specifically testifies as follows:

> The Petitioner, through counsel, was ready for a jury trial in which Defense witnesses were subpoenaed, exhibits were prepared and extensive efforts were made to be prepared for his jury trial. Shortly before his jury trial, Petitioner indicated to counsel that he wished to change his plea[.] . . .I met with Mr. Auyer on many occasions in my office from the pre-indictment phase through indictment and prepared with him for trial. I would estimate that I met with him on more than twenty (20) occasions face to face and had more than fifty (50) telephone discussions with him. Pre-trial preparations were made on Mr. Ayer's behalf[.]

(*Id.*, p. 2, ¶ 6).[4]  Mr. Davis also testifies that he approached the prosecution about obtaining a Rule 35 motion and that the prosecution agreed to a proffer session to allow petitioner to describe conduct which Auyer believed would be beneficial to the government.  (*Id.*, p.3, ¶ 8).  Dr. Davis further states that, afterward, he was told by the AUSA that his client had disclosed no information which was helpful to the government. (*Id.*).

Auyer has not identified the motions which he requested counsel to file nor specified how those motions would have assisted him in his defense against the charges brought by the government.  Nor has he countered Mr. Davis's affidavit testimony concerning his trial preparation with any specifics or with an affidavit of his own, pointing out the preparatory steps which counsel should have taken to be ready for trial, but did not take, and how those steps were important to his defense.  Instead, he merely reiterates the allegations made in his § 2255 pleading, insisting that he "can show that Davis only did things in the 11th hour, and was not prepared for trial, refused to prepare as Petitioner requested, and only at the last moment told the Petitioner that he would prepare after the prosecution rested." (Court File No. 148, Pet'r's Final Reply to 28 U.S.C. §2255, p.12, ¶5).

Without any solid allegations of fact which would indicate that Mr. Davis's performance was objectively unreasonable or unprofessional, much less anything to indicate that petitioner suffered prejudice because of that deficient performance, the Court cannot and does not find ineffective assistance of counsel with respect to his handling of the pre-trial phase of Auyer's criminal proceedings.

---

[4]  Because the affidavit contained two paragraphs numbered "5," the Court has renumbered the last three paragraphs in the eight-paragraph affidavit from "5," "6," and "7," to "6," "7," and "8."

*c) Plea Phase:*  Though Auyer did not explicitly indicate in his motion to vacate that he was also attacking the validity of his guilty pleas, he so indicates in his reply:  "I thought this § 2255 filing made it clear that I was claiming innocence on counts 1-3.  On counts 1-3, no, I am not guilty."  (*Id.*, p.13, ¶6).  Auyer also claims, in this filing, that he was pressured to plead guilty by his lawyer, whereas James Passons (petitioner's co-defendant) and Jerry Cooper (an unindicted co-conspirator who was subsequently indicted on the bank and mail fraud conspiracy) proceeded to trial and were acquitted of the charges.   Petitioner reasons that, since it is well-settled law that it takes two or more individuals to form a conspiracy and since the two alleged co-conspirators were found not guilty, "it is Ipso Facto that the Petitioner himself should be found not guilty and counts 1-3 should be dismissed."  (*Id.*, p. 2).

First of all, the conspiracy to commit bank fraud and mail fraud was alleged in Count three, not Counts 1 or 2.  Be that as it may, the law to which Auyer refers is the "rule of consistency," the rationale of which is this:  Because a conspiracy requires more than one actor, the acquittal of all conspirators save one in the same trial dictates an acquittal of the other.  *See United States v. Sachs,* 801 F.2d 839, 845 (6th Cir.1986).  Unfortunately for petitioner, the Sixth Circuit has held that the rule of consistency has no continuing validity, *United States. v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), *judgment vacated on other grounds*, 546 U.S. 803 (2005), and that "the acquittal of all but one co-conspirator during the same trial does not necessarily indicate that the jury found no agreement to act."  *United States v. Crayton,* 357 F.3d 560, 565 (6th Cir. 2004).  Even if it did have validity, one exception to the rule is that where a coconspirator has not yet been tried, the remaining conspirator can be convicted.  *United States v. Shipp,* 359 F.2d 185, 189 (6th Cir.) (where "a party remains under prospect of prosecution" a coconspirator could be found guilty of conspiracy), *cert. denied*, 385 U.S. 903 (1966).

12

That is the case here. Even if the rule of consistency were still viable, it would not apply to Auyer since he was convicted before his co-conspirators were tried and acquitted. But it does not apply, and petitioner's pleas of guilty, in which he admitted that he had conspired with to commit bank fraud, are not invalid on the basis of the rule of consistency now urged upon the Court.

Nor are petitioner's pleas invalid because of his naked assertion they he was coerced to plead guilty by his lawyer. In his affidavit, Attorney Davis avers that, prior to the guilty pleas, he advised his client of his right to a jury trial and discussed the advantages and disadvantages of a jury trial. Counsel further avers that, just before the trial was to begin, Auyer indicated to him that he wanted to plead guilty and that, thereafter, his client did just that in open court. (Court File No. 136, Attach. 1, Davis Affidavit). Mr. Davis also testifies that it is his opinion that petitioner made a voluntary decision to enter a guilty plea to the Indictment.

Furthermore, the Court questioned petitioner at his rearraignment concerning this very point.

. . . . .

| THE COURT: | Anybody forced you or compelled you or put any pressure on you in any way to get you to plead guilty? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | So, would I be correct in saying that your decision to plead guilty is a voluntary one on your part? |
| THE DEFENDANT: | Yes, Sir. |

. . . . .

| THE COURT: | Are you offering to plead guilty because you're guilty? |
| THE DEFENDANT: | Yes, sir. |

13

THE COURT:    The Court finds that this defendant is competent and that he's able and competent to enter a guilty plea here, that his plea is knowledgeable and voluntary and supported by an independent basis in fact containing the essential elements of the offenses charged here in this indictment. . . .

(Court File No. 154, Excerpt of Rearraignment Proceedings Transcript, p. 2).

As can be seen from this exchange with the Court, petitioner declared that he had not been forced or pressured into entering guilty pleas, that his decision to plead was voluntary and, finally, that he was pleading guilty because he, in fact, was guilty. Thereafter, the Court found that petitioner was competent to plead guilty and was doing so knowingly and voluntarily.

It is well-settled that where a court scrupulously follows the requirements of Fed. R. Crim. P. 11, "'the defendant is bound by his statements in response to that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). *See also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (defendant's "decision to lie to the district court cannot amount to prejudice").

In *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), the district court accepted a guilty plea pursuant to a plea agreement, but failed to ask the defendant, as Rule 11 requires, whether there were any promises external to that plea document. The Sixth Circuit explained the significance of that omission: "Such an inquiry would have prompted disclosure of the promises on which [petitioner] relies here, or, if [petitioner] had remained silent, likely would foreclose his postconviction reliance on these promises." *Id*. at 1345.

14

Accordingly, based on the record, including petitioner's sworn statements, the Court finds that no pressure or coercion induced Auyer's guilty pleas and reiterates its earlier finding that those pleas were knowingly and voluntarily made. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir.1983). Counsel did not render a prejudicial performance in this instance and petitioner's claim to the contrary has no merit.

      *d) Pre-Sentence Investigation & Sentencing Phases*: Auyer's claims in this category rest on allegations that counsel failed to convey to the Court all of petitioner's objections to the PSR, which contained "gross discrepancies from the truth," explaining to his client that "it does not matter;"that counsel failed to request an evidentiary hearing so that the Court could settle disputes about the PSR; and that counsel instructed him to "keep his mouth shut," refusing to examine or present evidence that petitioner had obtained which supported his position on the disputed facts. Indeed, petitioner insists that he had evidence, consisting of live witnesses, including himself, who would have clarified the facts surrounding restitution.

      As noted earlier, sentencing issues not raised at trial or on direct appeal generally cannot be presented for the first time in a motion to vacate, unless they are intertwined with a "successful claim that counsel provided ineffective assistance under the standard set forth in *Strickland v. Washington*." *Weinberger*, 268 F.3d at 351. This is the case with respect to one issue.

      Several of Auyer's allegations concerning restitution, however, can be disposed of at the outset. As Auyer correctly points out, he may be ordered to pay restitution for losses caused by conduct in the counts to which he pled guilty, but not for losses attributable to related conduct in counts which were dismissed or upon which he was acquitted. *See Hughey v. United States*, 495

U.S. 411 (1990) (limiting restitution under the Victim's and Witnesses Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3666, to victims' losses which result from the specific conduct for which a defendant is convicted).  But Auyer was sentenced under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3666A *et seq*., which amended the VWPA and which mandates restitution for a crime "committed by fraud or deceit," such as the counts of bank fraud, mail fraud, and conspiracy to commit bank fraud and mail fraud to which Auyer pled guilty, and it also authorizes restitution for all victims directly harmed by the conduct occurring during the course of the scheme as a whole.  18 U.S.C. § 2663(a)(2); *United States v. Coffee*, 110 Fed. Appx. 654, 654 (6th Cir. 2004) ("[R]estitution is authorized for all losses attributable to [petitioner]'s scheme. . . .  Restitution is not confined to the harm caused by the particular offense of conviction.").  In Auyer's case, this rule makes no difference since he pled guilty to all counts in the indictment—he was acquitted on no counts and no counts were dismissed.  Thus, while the principle espoused is true, it had no effect in petitioner's case.

Under the MVRA, a court must order a defendant to make restitution in the "full amount of each victim's losses" and "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3663A(a) and § 3664(f)(1)(A).  The  government must prove the amount of each victim's loss by a preponderance of the evidence.  *Id.*. § 3664(e).  And the Probation Office must issue a report containing "information sufficient for the court to exercise its discretion in fashioning a restitution order."  *Id.* § 3664(a).  In performing this statutory duty, the Probation Officer must gather a list of the victims, determine the amounts subject to restitution, and seek confirmation of these amounts from the identified victims.  *Id.* § 3664(d)(1)-(2).  The defendant may be required to pay an amount equal to the value of the property lost on the date of the loss or on the date of sentencing, less the value (as of the date the property is returned) of any part of the property that is

returned. *Id.* § 3663(b)(1)(B). Even so, the victim bank is not required to maximize its recovery. *United States v. Gale*, 468 F.3d 929, 941 -942 (6th Cir. 2006).

In the PSR, the probation officer listed two victims, Bank Tennessee and the Tennessee Department of Economic and Community Development, and specified that their respective losses were $1,254,518 (which could be reduced by $375,000 contingent upon a land sale) and $103,541, for a total actual loss of $1,358,059. (PSR, Pp.8 & 16, ¶¶ 25, 31, 86). One of the objections petitioner faults counsel for not making involves fraudulent invoices submitted to Bank Tennessee for equipment purchases. (As part of their agreement with the bank, the Auyers could draw on their loan as needed for equipment purchases. PSR, p.7, ¶ 21.) Counts 4 - 7 of the indictment stated that fraudulent invoices were presented to the bank in these amounts: $6,651.38; $8,025.12; $7,168.67; and $9,792.45. (Indictment, Pp. 7-8). The total of the four invoices is $31,637.25, but the probation officer found the sum of the fraudulent invoices to be $41,412.21. (PSR, p.7, ¶21).

Although the Davis affidavit provides no enlightenment as to what steps he took to reduce restitution on behalf of his client, the differences between these two figures was the basis for Davis' "Specific Objection # 19 to Paragraph 21, Sentence 3." (Objections to Presentence Report, p.6, copy in criminal court file). Thus, counsel's performance did not fall beneath the standard of objectively reasonable representation—he recognized the issue and he brought it to the attention of the probation officer. Most likely, this discrepancy was explained to counsel's satisfaction because he voiced no objections to the PSR when the Court asked at sentencing whether there were objections.

Furthermore, while the fraudulent-invoice amounts stated in the Indictment must be proved beyond a reasonable doubt, a great deal of information involving restitution is revealed during the preparation of the PSR. *United States v. Benit*, 2010 WL 2992402, *7 (E.D.Mich. July 27,2010) (rejecting claim that victims suffered no actual losses if such losses were not alleged in the

Indictment, since much information is disclosed during PSR investigation). And unlike conduct charged in an Indictment, that amount of restitution must be judicially determined by a preponderance of the evidence standard.

During the plea colloquy at Auyer's sentencing, when asked whether he had read his PSR, he answered, "Yes, sir," and when asked whether, at this time, there were any objections to the PSR, Mr. Davis answered, "We have worked through the objections with pretrial and there are no objections at this time." Petitioner said nothing. (Court File No. 98, Sent. Hr'g Tr., p. 3, Copy in Clerk's Office).

It is petitioner's burden as the proponent of his § 2255 motion to prove his allegations by a preponderance. Auyer has not carried his burden of demonstrating that the $41,412.21 figure was not correctly determined, that this sum was not based on information gleaned from the victims or from documents while the PSR was being drafted, and that this amount was not verified by the victim bank. Petitioner has not shown that Mr. Davis took any step which could not be considered as falling within the wide range of professional conduct, nor has he shown a reasonable probability that, but counsel's error on restitution for Counts 4-7, his sentence would have been different. *Weinberger*, 268 F.3d at 352.

The next attorney error alleged is that the Auyers offered 8 lots and other properties they owned in Alabama as collateral for the bank loan, which at the time the bank seized control of the Alabama real estate, had a Fair Market Value (FMV) of $424,500. The PSR states that each of the 8 lots was appraised at $20,000 by H. Stan Banton and Robert M. Banton for a total of $400,000. (PSR, p. 6, ¶19). (Clearly that figure is incorrect, as the United States conceded in its response to Auyer's § 2255 motion, because $20,000 multiplied by 8 equals $160,000.) Be that as it may, during the sentencing colloquy, the Court announced that "if that property is sold, I understand his

property is being sold[5] . . . . That will be—I should state on the record that will be a credit against the restitution amount if that occurs for both of them, I guess, if it's jointly owned, I assumed." Court File No. 98, Sent. Tr., p. 12). Thus the Court ordered that any sale of collateral used to secure the bank loan would be credited against the amount of restitution owed by the Auyers.

Petitioner borrowed $1.77 million from the bank; the bank kept $500,000 from Senator Cooper's proceeds as security for the loan; so Auyer got $1,270,000 from the bank. The actual loss to the bank was listed as 1,254,518. The difference between what Auyer realized from the loan ($1,270,000) and the actual loss listed in the PSR ($1,254,518) is $15,482.[6] However, the record, as recently supplemented, shows that Auyer was entitled to other credits to lower the sum of the restitution he is required to pay.

According to a letter dated March 2, 2007, written by Chris R. Zuercher, Senior Vice President of Bank Tennessee, and entitled "Re: Anthony's Construction Co., Inc. — Final Liquidation Report, USDA Case # 48-089-631145927, BankTennessee Loan # 345100115," Anthony's Construction Co., Inc., was liquidated and that the bank recovered proceeds from the sale

---

[5] A letter from Julie McMillan, special senior agent with the United States Department of Agriculture — the governmental agency which guaranteed 80 percent payment of the bank loan—indicates that the agency anticipated that the property would be sold that same day for $375,000. The letter is attached to the PSR. However, Auyer reports, in his reply, that the property ultimately sold for $45,000.

[6] Presumably, the $15,482 difference represents credit Auyer received for the payment(s) he made on the bank loan. The PSR stated that the Auyers made one payment on the loan and that the remaining payments were taken from the $500,000 the bank kept. (PSR, p.7, ¶24). An interest rate of 10% on a loan of $1,770,000 would yield roughly $177,000 yearly and $14,750 a month on the interest alone. If the interest rate were 6.9225 %, the yearly interest would be approximately $122,528 per year and some $10,210 per month. (USDA "BP Fund Request View," Pp.3 & 6, listing both rates). It should be noted that a BankTennessee officer testified that two or three payments were made and that the loan agreement reflected a loan amount of $1,772,187. (Doc. 99, Passons Trial, Chris Zuercher's Test, p. 6, ll. 17-21, and Pp. 30-31, ll. 1-3 (Copy in Clerk's Office).

of the collateral, which included $141,644.87 from the sale of the Morrison property (the site of the lumber mill) on April 13, 2004, and $3,825.00 from the sale of kilns on December 1, 2005. Petitioner's sentencing occurred on July 24, 2006, and any funds received from the sale of collateral prior to that date should have been applied to lower the restitution amount to the bank. Therefore, subtracting credits of $141,644.87 and $3,825.00 from the sum of $1,254,518 results in an amended restitution amount of $1,109,048.13 being owed to the bank, or a total restitution of $1,212,589.13 to both victims (1,109,048.13- bank restitution; $103,541- TDCED restitution). The letter also shows that, in November and December of 2006, the Banton brothers, the appraisers who gave inflated appraisals on the 8 lots and other tracts of Alabama land used as collateral for the loan, settled their dispute with the bank for $75,000 and $50,000 respectively and that the Alabama lots sold on February 1, 2007, for $5,597.95 and $38,182.55. Therefore, while these four post-sentencing proceeds could not have been accounted for in the restitution order issued at sentencing, these sums still should be credited toward Auyer's restitution amount, less any liquidation expenses.

To ensure that Auyer receives the credit he is due, the Clerk is **DIRECTED** to forward copies of the Bank Tennessee letter of March 2, 2007 and the USDA "BP Fund Request View" to the United States Attorney's Office, Financial Litigation Unit, in Knoxville, Tennessee.

At the time of Auyer's sentencing, this information was not contained in the PSR, or, by inference, in the files of the probation officer, which have since been purged, leaving but a skeleton file. Nor has the Court found any reference to these sales transactions in the transcripts of the Auyers' cases or those of the two alleged co-conspirators. However, the data involving the pre-sentencing sale of property and equipment undoubtedly existed and would have been available at the time of Auyer's sentencing, had counsel pursued this issue.

Because the amount of restitution was incorrect and because the Sixth Circuit has instructed

that "[a] refusal to appeal an erroneous restitution award, which award would have been subject to reversal on appeal, would meet the *Strickland* test and would clearly constitute cause for [petitioner's] failure to appeal the award," *Weinberger*, 268 F.3d at 357 (quoting *Ratliff,* 999 F.3d at 1026), Auyer has satisfied the cause requirement.

And Auyer has also shown prejudice. But for Mr. Davis' failure to delve into the bank's recoupment of some of the loan funds though the sale of collateral and to raise this matter at sentencing or on appeal, petitioner would have received credit for the sale of property in 2004 and equipment in 2005 at his 2006 sentencing and would not have been subject to an incorrect restitution order.

As to petitioner's other contentions concerning the valuation of collateral or his insistence that restitution should be $135,178 or in the $53,541 range, he has submitted no affidavit or any other documentary evidence to support his positions. Auyer's speculations and suppositions are no substitute for facts. Because petitioner's own self-serving estimates of the value of the collateral held by the bank and the manufacturing facility, fixtures, inventory, equipment, and furniture involved in his commercial venture do not undercut the restitution amounts discussed above, counsel did not provide ineffective assistance during this phase of the proceedings, except in connection with the restitution award discussed above.

*f) Post- Sentencing Phase*: Petitioner maintains that Mr. Davis failed to obtain a written agreement from the AUSA concerning the government's filing of a Rule 35(b) motion, which was negotiated before he gave substantial assistance and, therefore, the AUSA would not honor the oral agreement he had made with counsel concerning this matter. Moreover, counsel failed to file a motion to compel the government to file a Rule 35(b) motion on petitioner's behalf, though his client had met all the requirements to receive a sentence reduction under the rule. Lastly, counsel has not

responded to numerous telephone calls, e-mails, and letters, made or written, presumably by Auyer.

The first contention in this category is a companion to Auyer's earlier allegation of incompetent counsel, except that, in this one, petitioner alleges that counsel should have obtained a *written* agreement concerning the Rule 35(b) motion. However, petitioner pled "straight up" just before trial, without an executed plea agreement. If there was no written plea agreement document, it begs the question as to how counsel could have justified his request for a written agreement as to a Rule 35 motion, much less obtained the concurrence of the AUSA to such a proposal.

According to counsel's affidavit testimony, the government's attorney consented to listen to the information petitioner thought would prove profitable to the government. Petitioner had the opportunity to divulge that information, in hopes that what he divulged would benefit the government and, thereby, would secure for himself a lower sentence under a Rule 35(b) motion. The fact that the AUSA did not see the information in the same light as did Auyer in no way reflects on the representation Mr. Davis rendered to his client. Under these particular circumstances, the Court sees no deficient performance and, certainly, no resulting prejudice.

The second allegation, which concerns counsel's failure to move to compel the United States to file a Rule 35(b) motion on petitioner's behalf, is a non-starter. Rule 35(b) permits a district court to reduce a sentence, upon a motion by the government, based upon a defendant's "substantial assistance in investigating or prosecuting another person who has committed an offense." Fed. R. Crim. P. 35(b)(1). The motion may be made more than one year after sentencing, depending on whether the substantial assistance contains certain enumerated types of information. Fed. R. Crim. P. 35(b)(2). The government's refusal to file a substantial-assistance motion can be judicially reviewed only if a defendant makes a substantial threshold showing that the refusal was driven by an unconstitutional motive, such as race or religion. *Wade v. United States,* 504 U.S. 181, 185-86

(1992) (refusal to make a motion for a downward departure under USSG § 5K1.1); *See also, Pepper v. United States*, 131 S.Ct. 1229, 1240, n.8 (2011) ( ("A defendant's race or nationality may play no adverse role in the administration of justice, including at sentencing") (citing *United States v. Leung,* 40 F.3d 577, 586 (2nd Cir. 1994)).

In this case, there is no suggestion that the government's attorney elected not to file a Rule 35(b) motion because of Auyer's race, religion, national origin or any other unconstitutional reason. Indeed, the prosecutor disclosed to counsel that his decision not to seek a Rule 35(b) sentence reduction was based on the fact that the information Auyer divulged would not benefit the government. *See Pepper*, at 1248 n.15 ("Rule 35(b) departures address only postsentencing cooperation with the Government,. . . and thus a defendant with nothing to offer the Government can gain no benefit from Rule 35(b).").

Because the United States had discretion not to file a motion and because it would have been futile to seek to compel the government to make a substantial assistance motion under Rule 32(b), which it believed was not warranted, counsel's alleged failure to file a Rule32(b) motion did not amount to a deficiency of performance, did not result in any prejudice, and did not violate Auyer's right to counsel under the Sixth Amendment. The writ will not issue with respect to this claim.

V.       **Conclusion**

Accordingly, the motion by Anthony C. Auyer for post-conviction relief pursuant to 28 U.S.C. § 2255 will be **DENIED** in part and **GRANTED** in part. An amended order of restitution

and a separate judgment will enter.

SO ORDERED.

ENTER this the 4th day of April, 2011.


_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE